UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | 3:20-CV-568-LRH-WGC |
|---|---|
| Plaintiff, | **Default Judgment of Forfeiture and Final Judgment of Forfeiture** |
| v. | |
| $357,965.00 IN UNITED STATES CURRENCY, | |
| Defendant. | |

I. **FACTS**

1. On May 10, 2020, at approximately 7:29 a.m. (Pacific Time), Daniel Hulsey, Jr. (Hulsey) was driving a black 2020 Toyota pick-up truck, bearing Texas license plates, westbound on Interstate-80 in Washoe County, Nevada. Hulsey was the driver and sole occupant of the Toyota truck.

2. The Toyota truck being driven by Hulsey was stopped by an officer of the Nevada Highway Patrol (NHP) in Washoe County, Nevada, due to excessive speed in violation of Nevada law.

3. After initiating a traffic stop of the Toyota truck due to the observed traffic violations, a NHP officer approached the Toyota truck and requested identification from the driver. The driver identified himself as Hulsey through his Texas commercial driver's license.

4. While Hulsey was looking for his personal identification and vehicle registration documentation, a NHP officer and Hulsey engaged in a consensual conversation. Hulsey stated the Toyota truck belonged to him.

5. Responding to a NHP officer's enquiry, Hulsey stated he was traveling to his daughter's home in Sacramento, California, where he would meet with his wife and they would then drive in two vehicles back to Texas. Hulsey further stated he and his wife would be transporting personal belongings of his daughter to Texas with the expectation that his daughter would relocate to Texas, Hulsey later acknowledged to the NHP officer that these statements were false.

6. Responding to a Washoe County Sheriff's Office (WCSO) officer's enquiry, Hulsey stated he and his brother owned a concrete construction company in Texas with seven employees and multiple commercial vehicles. An internet search for the company identified by Hulsey yielded no on-line record of any such company.

7. Responding to a WCSO officer's enquiry, Hulsey stated he did not possess and the Toyota truck did not contain any large amounts of U.S. currency. Hulsey later acknowledged to the NHP officer that the statement was false.

8. Hulsey consented, orally and in writing, to a search of the Toyota truck and any luggage or containers therein.

9. Based on the observations of an NHP officer and the oral and written consent by Hulsey for a search of the Toyota truck and any luggage or containers therein, one or more NHP officers conducted a search of the Toyota truck and its contents.

10. The search of the Toyota truck yielded the discovery of a large quantity of U.S. currency in a yellow duffel-type bag in the rear passenger area of the Toyota truck. The U.S. currency in the yellow duffel-type bag was located in three separate plastic bags within the yellow duffel-type bag.

11. A white plastic bag, of a type typically used for trash disposal, was within the yellow duffel-type bag and contained several bundles of U.S. currency rubber-banded together and marked with the number "10" – consistent with the manner in which currency associated with illegal drug trafficking activity is bundled and marked.

12. A red plastic bag, of a type typically used for retail purchases, was within the yellow duffel-type bag and contained several bundles of U.S. currency rubber-banded

together and marked with different numbers – consistent with the manner in which currency associated with illegal drug trafficking activity is bundled and marked.

13. A black and silver plastic bag, of a type typically used for retail purchases, was within the yellow duffel-type bag and contained several bundles of U.S. currency rubber-banded together, vacuum sealed into plastic bags, and marked with numbers "10" and "20" – consistent with the manner in which currency associated with illegal drug trafficking activity is bundled and marked.

14. The search of the Toyota truck yielded the discovery of a black duffel-type bag in the rear passenger area of the Toyota truck. The black duffel-type bag contained a black roller suitcase containing clothing and personal effects.

15. A certified reliable canine trained to detect the odor of illegal drugs alerted to the presence of the odor of illegal drugs coming from U.S. currency found in the yellow duffel-type bag, as described in paragraphs 10-13, above.

16. Upon discovering the U.S. currency in the yellow duffel-type bag, as described in paragraphs 10-13, above, Hulsey and a NHP officer engaged in a consensual conversation. Hulsey stated he had packed his own bags and was traveling with two duffel-type bags. Hulsey further stated he was traveling with approximately $376,000 (three hundred seventy-six thousand dollars) to meet with his wife and daughter in Sacramento. Hulsey further claimed the U.S. currency was his life savings obtained through work. Hulsey further stated he owed approximately $10,000 (ten thousand dollars) to the IRS and his sole source of income was approximately $1000 (one thousand dollars) from Social Security.

17. Upon being advised that the U.S. currency would be seized pending further investigation, Hulsey and a NHP officer engaged in a consensual conversation. Hulsey stated the U.S. currency located in the yellow duffel-type bag, as described in paragraphs 10-13, above, did not belong to him and his earlier statements were false regarding his ownership of the currency.

///

3

18. Hulsey stated he would be paid an as-yet-undetermined amount for his work transporting the U.S. currency to California. A quantity of U.S. currency, rubber-banded together, was located in Hulsey's pocket.

19. Hulsey stated he had not on any previous occasion transported a large amount of U.S. currency in exchange for payment to him of a sum of money.

20. Hulsey stated his wife was not in Sacramento and his earlier statements were false about meeting his wife in Sacramento.

21. Hulsey stated his daughter was not in Sacramento and his earlier statements were false about meeting his daughter in Sacramento.

22. Hulsey stated he did not know how the U.S. currency came to be placed in the Toyota truck and further stated the U.S. currency could have been placed in the Toyota truck by an unknown person in Elko, Nevada, where Hulsey had stayed overnight the night previous.

23. Hulsey stated he did not regard it as odd that an unknown person would place a large sum of money in his truck without him (Hulsey) knowing the source of the currency or why the currency was being so placed.

24. The U.S. currency located in the yellow duffel-type bag, as described in paragraphs 10-13, above, is the entirety of the defendant currency.

25. The U.S. currency located in the yellow duffel-type bag, as described in paragraphs 10-13, above, was comprised of 658 $100 bills, 140 $50 bills, 14,055 $20 bills, 273 $10 bills, 245 $5 bills, and 110 $1 bills.

## II.   PROCEDURE

On October 1, 2020, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 1, alleging the $357,965 (defendant property):

   a. constitutes proceeds traceable to the exchange of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6);

4

    b. constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6); and

    c. constitutes money used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

On October 5, 2020, the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 3, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 4.

Pursuant to the Order, ECF No. 3, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant property: the Complaint, ECF No. 1, the Order, ECF No. 3, the Summons and Warrant, ECF No. 4, and the Notice of Complaint for Forfeiture. Notice was published according to law.

Pursuant to Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice is sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd

Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on Greg Addington, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 1; Order for Summons and Warrant, ECF No. 3; Summons and Warrant, ECF No. 4

On October 21, 2020, the United States Marshals Service (USMS) served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. 6.

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from October 10, 2020, through November 8, 2020. Notice of Filing Proof of Publication, ECF No. 8, p. 6.

On December 15, 2020, Daniel Hulsey, Jr., filed an Answer to the Complaint. Answer, ECF No. 12.

On December 17, 2020, the United States filed a Motion to Strike the Answer. Motion to Strike Answer, ECF No. 13.

On December 28, 2020, Daniel Hulsey, Jr., filed a claim. Claim, ECF No. 15.

On January 5, 2021, the United States filed a Motion to Strike the Claim. Motion to Strike Claim, ECF No. 18.

On February 10, 2021, the Court denied the Motion to Strike Daniel Hulsey, Jr.'s Claim and Answer. Order Denying the Motions to Strike, ECF No. 23.

On November 10, 2021, the United States filed a Settlement Agreement for Entry of Judgment of Forfeiture as to Daniel Hulsey, Jr., and Order, regarding the $357,965 in United States Currency. Claimant waived, among other things, service of process. Settlement Agreement, ECF No. 33.

/ / /

On November 16, 2021, the Court entered the Order approving the Settlement Agreement for Entry of Judgment of Forfeiture as to Daniel Hulsey, Jr. Order Approving Settlement Agreement, ECF No. 34.

No other person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

On November 23, 2021, the United States filed a Motion for Entry of Clerk's Default against the $357,965 in United States Currency and all persons or entities who may claim an interest in the defendant property, except for Daniel Hulsey, Jr., in the above-entitled action. Motion for Entry of Clerk's Default, ECF No. 35.

On December 10, 2021, the Clerk of the Court entered a Default against the $357,965 in United States Currency and all persons or entities who may claim an interest in the defendant property, except for Daniel Hulsey, Jr., in the above-entitled action. Entry of Clerk's Default, ECF No. 36.

Daniel Hulsey, Jr., is neither a minor nor an incompetent person.

## III.  THE REQUIREMENTS FOR DEFAULT WERE MET

### A.  Legal Standard

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the Complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Supp. R. G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of

prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-WGC, 2019 WL 4601513, at *3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at *1 (D. Nev. July 16, 2018).

For purposes of a default judgment, the well-pled allegations of a complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

**B.    The Forfeiture Requirements for Default Were Met.**

a. Judgment Sought

Pursuant to Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Complaint for forfeiture.

b. Default and Entry of Default

As shown above, the United States requested entry of Clerk's Default against the $357,965 in United States Currency and all persons or entities who may claim an interest in the defendant property, except for Daniel Hulsey, Jr., in the above-entitled action. ECF No. 35. The Clerk entered the Default as requested. ECF No. 36.

c. Notice

Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. ECF No. 8. The government could not reasonably identify any other potential claimants to serve Notice.

/ / /

d. Legal Sufficiency of the Complaint

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the property with reasonable particularity. The Complaint stated where the seizure of the defendant property occurred and its current location. The Complaint identified the statute under which the forfeiture action has been brought. The Complaint alleged sufficiently detailed facts to support a reasonable belief that the United States would be able to meet its burden of proof at trial. Supp. R. G(2); ECF No. 1.

e. Status of Potential Claimants

Daniel Hulsey, Jr., has entered into a Settlement Agreement with the United States. Order Granting Settlement Agreement, ECF No. 34.

No other person or entity has filed a claim, and the time to file a claim has passed.

**C.   The Civil Requirements for Default Were Met.**

a. The Plaintiff Would be Prejudiced Without a Judgment

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the defendant property, and that evidence is uncontested. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014) (brackets added), ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.").

b. & c. The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.

As shown in the statement of the case above, the government has a bona fide case against the defendant property and the Complaint sufficiently alleges the facts of the case.

/ / /

/ / /

d. The Amount of Money at Stake

The value of the defendant property was clearly established in the Complaint, ECF No. 1, and the defendant property is forfeitable pursuant to 21 U.S.C. § 881(a)(6).

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.
>
> *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Complaint alleges the serious crime of exchanging or intending to exchange moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The money at stake is the tainted currency related to a completed or contemplated illegal-drugs transaction in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and proceeds traceable to the violations.

e. There Are No Possible Disputes of Material Fact

No issues of material fact exist, and the allegations of the Complaint are established as a matter of law. The property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

    a. constitutes proceeds traceable to the exchange of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6);

    b. constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6); and

///

      c. constitutes money used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

### f. Default Was Not the Result of Excusable Neglect

The record shows that the claimant was served the Complaint. Stipulation to Acknowledge Receipt of Notice of Complaint for Forfeiture in Rem, ECF No. 5. Claimant filed an answer to the Complaint and a claim. ECF Nos. 12, 15. There is no evidence of excusable neglect.

### g. Public Policy Does not Prevent Default Judgment

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, no other potential claimant filed a claim and an answer to the government's Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimant(s)] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.
>
> *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

Denying the government's Motion would not further public policy. While cases should be decided on the merits when possible, the claimant has not contested the facts of the Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate. *See Covenant Care California*, 2018 WL 3429669, at *2.

## IV. JUDGMENT

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to all persons or entities who may claim an interest in the defendant property, except for Daniel Hulsey, Jr., and Final Judgment of Forfeiture as to the $357,965 in United States Currency and Daniel Hulsey, Jr.

///

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered against all persons or entities who may claim an interest in the defendant property, except for Daniel Hulsey, Jr., in the above-entitled action.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against the $357,965 in United States Currency and Daniel Hulsey, Jr.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Daniel Hulsey, Jr, forfeited all possessory rights, ownership rights, and all rights, titles, or interests in the property to the United States.

IT IS HEREBY CERTIFIED, pursuant to 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

DATED: January __19__, 2022.